UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| THOMAS HILL, | ) CASE NO. C08-1832 RSM |
|  | ) |
| Petitioner, | ) |
|  | ) ORDER DENYING PETITIONER'S |
| v. | ) FEDERAL HABEAS PETITION AND |
|  | ) DISMISSING ACTION |
| WARDEN STOLC, | ) |
|  | ) |
| Respondent. | ) |

This matter comes before the Court on Petitioner's federal habeas petition (Dkt. #6).

Petitioner identified six grounds for relief from his state court conviction. Magistrate Judge

Donohue prepared a Report and Recommendation addressing all six of Petitioner's

contentions and recommending that this Court deny the petition and dismiss this action. As

explained below, this Court adopts the Report and Recommendation as to grounds one

through four, and parts of grounds five and six. As to the remaining parts of grounds five and

six, this Court agrees with the Report and Recommendation that the petition should be denied,

but relies on different reasoning.

## I. BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts as follows:

ORDER
PAGE - 1

On the afternoon of February 20, 2003, Ronald Preston died after being shot seven times outside a store in Seattle. A number of individuals were in the immediate area at the time of the shooting. During the subsequent investigation, police linked Hill to the homicide. Several eyewitnesses identified Hill as the person who shot and killed Mr. Preston. Other individuals stated that they witnessed the shooter leave the scene in a vehicle similar to one owned by Hill's brother, Carlos Hill.

Two days after Mr. Preston was killed, police attempted without success to take Hill into custody at his place of residence. Authorities later learned that Carlos Hill had taken an emergency two-week family leave from Costco where he was employed.

In November 2003, Hill was arrested in the state of Mississippi. He was eventually extradited to Washington to stand trial on charges of first degree murder and unlawful possession of a firearm in the second degree.

The jury trial was held in December 2004. Nell Cole positively identified Hill as the person who shot and killed Mr. Preston. Ms. Cole testified that she was standing outside the store when she heard the first gunshot and turned to see Hill fire a gun four more times at Mr. Preston, who had fallen to the ground. According to Ms. Cole, she was selling pants with a friend in front of the store when the shooting took place.

Andrea Robinson described a heated exchange between Mr. Preston and Hill shortly before the shooting. After Mr. Preston threatened to assault or kill him, Hill told Mr. Preston that he had "protection." Mr. Preston said that he did not care and that Hill was a punk. Ms. Robinson and Hill then walked to a nearby store where they stayed for several minutes. Hill left the store first while Ms. Robinson remained inside for two or three additional minutes. At some point, Ms. Robinson heard numerous gunshots and returned to the store where she saw Mr. Preston lying on the ground and in serious condition. Other eyewitnesses testified about what they saw and heard. Detective Steiger testified about the efforts police undertook to find Hill, including contacting Carlos Hill's employer. The medical examiner testified that Mr. Preston suffered seven gunshot wounds to the head, neck, trunk, and right upper extremity.

The State proposed instructing the jury on second degree murder, as well as on the charged crime of first degree murder. Hill objected to the instruction on the inferior degree offense. The trial court overruled his objection and submitted the instruction to the jury.

The jury could not reach a unanimous verdict on first degree murder. It concluded, however, that Hill was guilty of the lesser degree offense of second degree murder. The jury also found Hill guilty of unlawful possession of a firearm as charged in the second amended information. At sentencing, the trial court imposed a standard range sentence of 254 months on the murder conviction based on an offender score of two. . . .

*State v. Hill*, 2006 WL 1195513 at *1.

ORDER
PAGE - 2

Petitioner appealed his conviction to the Washington Court of Appeals. When he was unsuccessful, he appealed to the Washington Supreme Court which denied review without comment. Petitioner then filed a personal restraint petition in the Washington Court of Appeals, and after that was denied, filed a motion for discretionary review with the Washington Supreme Court. That motion was also denied. Petitioner appealed to this district court under 28 U.S.C. § 2254.

Petitioner asserts the following six grounds for relief:

1)  A lesser included instruction was admitted over objection, violating Petitioner's Fifth and Fourteenth Amendment rights.

2)  A tape recording of unsworn statements was admitted as impeachment evidence in violation of Petitioner's Fifth and Fourteenth Amendment rights.

3)  Petitioner's confrontation clause rights were violated when the trial court admitted hearsay testimony.

4)  The prosecutor's withholding of discovery denied Petitioner due process in violation of his Fifth and Fourteenth Amendment rights.

5)  The Prosecutor committed misconduct by vouching for witnesses, mischaracterizing impeachment evidence as substantive evidence, and misstating testimony during closing arguments.

6)  Petitioner was denied effective assistance of counsel in violation of his Fifth, Sixth, and Fourteenth Amendment rights when his attorney (a) failed to investigate other suspect evidence, (b) failed to acquire an eyewitness expert, (c) declined the court's offer to give a limiting instruction regarding the impeachment of eyewitness testimony, and (d) failed to object to the misuse of impeachment evidence in the prosecutor's closing argument.

Magistrate Judge Donohue addressed these grounds for relief in detail in his Report and Recommendation. He concluded that Petitioner had not exhausted his state remedies, as required by 28 U.S.C. § 2254, as to grounds one, three, and the last two parts of five. As to grounds two and four, the Report and Recommendation concluded that Petitioner's claims did not raise federal constitutional concerns and were thus not grounds for federal habeas relief.

ORDER
PAGE - 3

As to the exhausted portion of ground five, that the prosecutor committed misconduct by vouching for a witness, the Report and Recommendation concluded that there was no misconduct. Finally, as to ground six, the Report and Recommendation held that the state courts did not err in denying Petitioner's ineffective assistance of counsel claim because Petitioner's counsel was not deficient, nor was Petitioner prejudiced.

## II. DISCUSSION

The Court Adopts the Report and Recommendation as to Grounds One through Four. Ground five involves three separate claims of prosecutorial misconduct. Petitioner alleges the prosecutor in closing arguments (1) improperly vouched for witnesses, (2) mischaracterized a tape of witness Robinson's statements admitted solely for impeachment purposes as substantive evidence, and (3) misstated the testimony of witness Simpson. The Court adopts the Report and Recommendation as to part one and discusses parts two and three below.

Ground six involves four claims. Petitioner argues his counsel was ineffective because (1) counsel failed to investigate other suspect evidence, (2) counsel failed to obtain an eyewitness testimony expert, (3) counsel declined the court's offer to give a limiting instruction regarding impeachment evidence of witness Robinson, and (4) counsel failed to object to misuse of impeachment evidence in the prosecutor's closing argument. The Court adopts the Report and Recommendation as to parts one through three, which dismissed Petitioner's claims, and discusses part four below.

### A. Misuse of Impeachment Evidence in Closing Arguments

Although Defendant did not argue that any part of ground five was unexhausted, the Report and Recommendation concluded that Petitioner did not exhaust parts two and three of ground five. As explained in the Report and Recommendation, a state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus, and this exhaustion requirement is only met when a prisoner "fairly presents" his claims to every

ORDER
PAGE - 4

state court level.  (*See* Dkt. #20 at 7-8).  With the benefit of Petitioner's objections to the

Report and Recommendation, which provided citations to the record, this Court finds that

Petitioner did properly present the second part of ground five to both the Washington Court

of Appeals and the Washington Supreme Court in his personal restraint petition.  (Dkt. #16,

Ex. 13 at 3; Dkt. #16, Ex. 16 at 8).  Petitioner's argument to the state courts that the

prosecutor misused impeachment evidence as substantive evidence was buried under the

same heading as his argument that the impeachment evidence should not have been admitted

in the first place, but nonetheless, it was there.  Thus, this Court must consider whether the

prosecutor committed misconduct by misusing impeachment evidence in closing argument.

To do so requires additional discussion of the record, which follows.

Witness Robinson testified at trial that Petitioner and the victim entered into a verbal

altercation shortly before the shooting.  She testified, however, that she did not actually see

Petitioner shoot the victim.  The prosecutor impeached Ms. Robinson, her own witness, by

introducing an audio tape recording of prior statements Robinson made to the police in which

Ms. Robinson stated that she saw Petitioner standing over the victim, shooting him.  Since

these prior inconsistent statements to the police were not made under oath, the trial judge

admitted the tape recording solely for impeachment purposes, specifically to allow the jury to

assess Ms. Robinson's word choice and tone of voice on the recording in order to determine

whether she had been coerced into testifying.  At no time, however, was any substantive

evidence admitted that Ms. Robinson witnessed Petitioner shoot the victim.

Closing arguments proceeded with the prosecutor giving argument, followed by

argument by the defense, and finally a rebuttal argument by the prosecutor.  At the end of the

prosecutor's rebuttal argument, the prosecutor played a portion of the Robinson tape.  The

transcript reads:

> (Playing of tape)
> On the 20th somewhere around 2:30 in the afternoon, you were in front of
> Jordan's Drugs, is that correct, 26th and Cherry?  What happened in your own
> words?

ORDER
PAGE - 5

I was on the corner – talking and he told me he had problems with somebody, and he was on the corner arguing with T[1] and me and T went in the store and the police came in the store and when we came back, T stayed in front of the store and I walked off. I heard gunshots and I seen T over –
(Tape substantially inaudible.)
[Prosecutor]: And I see T over him shooting him.
Apparently the defense agrees there is no issue with regard to premeditation. She sees T standing over him shooting him.
State asks you to find Hill guilty as charged.

(Dkt. #16, Ex. 24 at 118-19).[2]

Approximately two and a half hours into deliberations, the jury submitted a question to the trial court: "We would like to see tape Exhibit #39." (Dkt. #16, Ex. 14 App. C, Minutes for 12/14/04 at 1). The court responded that the jury had been provided with all the exhibits admitted into evidence and would not be provided any additional exhibits. The jury came back with another question thirty minutes later:

We understand that we have all the evidence. However, we did hear a tape of Ms. Robinson's testimony that does not seem to be available. If it is not, can we consider what we heard on that tape?

(*Id.* at 2). At this point the trial court gave its first and only limiting instruction regarding the tape:

As previously instructed in instruction #1, the evidence you are to consider consists of the testimony of witnesses and the exhibits admitted into evidence. You may consider what you heard on that tape only on the issue of assessing the credibility of Ms. Robinson's testimony.

(*Id.*).

"The standard of review for prosecutorial misconduct in federal habeas cases is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A court may only disturb a petitioner's conviction if the prosecutor's

---

[1] Ms. Robinson refers to Petitioner as "T."
[2] Petitioner's counsel did not object to the prosecutor's use of the tape. However, this does not preclude the Court from reviewing the claim because Petitioner asserted in his state court appeals that his counsel was ineffective in failing to object.

ORDER
PAGE - 6

misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. To violate due process, a prosecutor's remarks, when viewed in the context of the entire trial, must render the trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 183 (1986).

As previously stated, there was never any substantive evidence admitted at trial that Ms. Robinson saw "T over him shooting him." Yet the direct implication from the playing of the tape, the prosecutor's repetition of that line from the tape, and the prosecutor's abrupt end to closing arguments is that the jury should believe that Ms. Robinson saw Petitioner stand over the victim and shoot him. The recorded statements could not be used for this purpose. Furthermore, the prosecutor's tactical move to play the tape at the very end of closing arguments left defense counsel with no opportunity to respond. The misused, taped statements were the last words the jury heard before going into deliberations, and the jury's questions to the trial court clearly demonstrate that the jury found the tape to be of paramount importance. Based on the foregoing, it is clear that this was misconduct. *See Washington v. Hofbauer*, 228 F.3d 689, 699-700 (6th Cir. 2000) (prosecutor's use of character evidence for improper purposes in closing arguments constituted plain misconduct).

However, the prosecutorial misconduct did not render the trial fundamentally unfair. The trial judge's instruction to the jury during deliberations that "[y]ou may consider what you heard on that tape only on the issue of assessing the credibility of Ms. Robinson's testimony" sufficiently cured any harm caused by the prosecutor's misuse of the evidence. *See Burks v. Borg*, 27 F.3d 1424, 1431 (9th Cir. 1994) (prosecutor's improper closing argument did not have "a substantial and injurious effect or influence" on the jury's verdict where the trial judge took "prompt and effective action" to correct the impropriety). The Court must presume that the jury followed its instructions. *Drayden*, 232 F.3d at 713 (*citing Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).

**B. Misstating Witness Simpson's Testimony in Closing Arguments**

Petitioner claims that the prosecutor also committed misconduct in misstating witness Simpson's testimony during closing arguments. Specifically, he claims the prosecutor stated in closing arguments that witness Simpson identified Petitioner as the shooter, when in fact witness Simpson did not. The Report and Recommendation dismissed this claim, concluding that Petitioner did not bring this argument before the state courts and therefore had not exhausted his state court remedies. In his objections to the Report and Recommendation, Petitioner references specific pages from his personal restraint petition to the Washington Court of Appeals and his motion for discretionary review to the Washington Supreme Court that he claims contain his arguments. (Dkt. #16, Ex. 13 at 3; Dkt. #16, Ex. 16 at 8). After carefully examining the record, however, this Court agrees with the Report and Recommendation that Petitioner did not fairly present this argument to the state courts.

In his Personal Restraint Petition, Petitioner mentioned the use of witness Simpson's testimony in closing arguments, but his argument in that regard were so intertwined with his arguments regarding the Robison tape as to make the argument unreasonably confusing. Petitioner wrote, "In closing arguments, the prosecution misused the Robinson tape as substantive evidence to bolster the false claim that witness Robinson said I was the shooter and that witness Simpson said I was the shooter." (Dkt. #16, Ex. 13 at 3). This is too opaque. A reasonable judge would not understand from this and the surrounding text that Petitioner was arguing that the prosecutor falsely stated in closing arguments that witness Simpson identified him.

Even if this obscure reference were enough to meet the exhaustion requirements, Petitioner's claim fails on the merits. The prosecutor stated in closing that witness Simpson saw the shooter with a black, semiautomatic handgun, that the shooter was a black male, five feet and nine inches tall and 160 pounds, and that he was wearing gray sweats and "some kind of hat." (Dkt. #16, Ex. 24 at 117-18). This was an accurate portrayal of Simpson's testimony on direct examination. (Dkt. #16, Ex. 22 at 140-153). The prosecutor then asked the jury "So was Nell the only one who said he was the shooter or did Mr. Simpson in effect

tell you he was the shooter?" (Dkt. #16, Ex. 24 at 118). Such a rhetorical question is proper argument, not misconduct.

### C. Ineffective Assistance of Counsel

Petitioner claims that he was denied the effective assistance of counsel in violation of the Sixth Amendment because his counsel (1) failed to investigate other suspect evidence, (2) failed to acquire an eyewitness expert, (3) declined the trial court's offer to give a limiting instruction when the Robinson tape was admitted, and (4) failed to object to the misuse of that tape in the prosecutor's closing argument. The Court adopts the Report and Recommendation with respect to the first three claims of ineffective  assistance of counsel, but elaborates here regarding the last claim.

To make out a case for ineffective assistance of counsel, Petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's error, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). The Court need not consider the first prong of the *Strickland* test because the second prong is not met. As explained above, the trial court's instruction to the jury during deliberations ensured that the jury did not consider the Robinson tape substantively. Thus, Petitioner cannot show that the outcome of the trial would have been different had counsel objected, and Petitioner's ineffective assistance of counsel claim fails.

### III.  CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) The Court partially adopts the Report and Recommendation (Dkt. #20) as explained above.

(2) Petitioner's federal habeas petition (Dkt. #6) is DENIED. This action is DISMISSED.

1    (3) The Clerk is directed to forward a copy of this Order to all counsel of record.

2

3    DATED this 4th day of December, 2009.

4

5

6               RICARDO S. MARTINEZ

7               UNITED STATES DISTRICT JUDGE